UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FILED

DEC 2 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Martin A. Armstrong
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

#12518-050 Identification Number

Vs.

Harley G. Lappin, Director
Federal Bureau of Prisons
Central Office
320 First Street, NW
Washington, DC 20534



C O M P L A I N T

T R I A L   B Y   J U R Y
R E Q U E S T E D

CIVIL ACTION NO:_____

CASE NUMBER  1:06CV02221

JUDGE: Unassigned

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 12/28/2006

Submitted pro se by:

Martin A. Armstrong
Metropolitan Correctional Center
#12518-050
150 Park Row
New York, NY 10007

RECEIVED

NOV 1 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Martin A. Armstrong | ! | |
| | ! | |
| -v- | ! | C O M P L A I N T |
| | ! | |
| Harley G. Lappin, Director | ! | JURY  TRIAL IS |
| Federal Bureau of Prisons, and | ! | |
| The Federal Bureau of Prisons | ! | DEMANDED |

1) Martin A. Armstrong ("Armstrong" or "Plaintiff") alleges for his complaint against
Harley G. Lappin, Director of the Federal Bureau of Prisons ("Lappin" of "Director")
and the Federal Bureau of Prisons ("BOP"),(herein Lappin and BOP are collectively
referred to as "Defendants), on information and belief, except as to his own acts
specifically defined:

<u>Nature of the Proceedings</u>

2) This complaint concerns a request for declaratory and injunctive relief to prevent
the BOP and its Director from refusing to credit previously served time of imprison-
ment of nearly 7 years erroneously imposed without statutory authority in contraven-
tion of - 18 USC §4001(a) as a civil contemnor constituting an abuse of process from a
calculation of a criminal sentence pursuant to:

**18 USC §3585(b) Credit for prior custody. -**

A defendant shall be given credit toward the service of a term
of imprisonment for any time he has spent in official detention
prior to the date the sentence commences -

(1) as a result of the offense for which the sentence was
imposed; or
(2) as a result of any other charge for which the defendant was
arrested after the commission of the offense for which the
sentence was imposed;

3) Given that Congress has delegated this function to the BOP and not the sentencing
court combined with the plain language of the statute that "a defendant <u>shall</u> be
given credit toward the service of a term of imprisonment for <u>any</u> time he has spent
in official detention prior to the date the sentence commences ... as a <u>result of</u>
the offense for which the sentence was imposed...," there is no room for discretion
concerning this matter.

4) The use of the word "'shall' ... normally creates an obligation impervious to judicial
discretion" <u>Miller v French</u>, 530 US 327, 147 Led2d 326, 336 (2000), quoting <u>Lexecon,
Inc. v Milberg Weiss Bershad Hynes & Lerach</u>, 523 US 26, 35 (1998). "The word 'shall'
is ordinarily 'the language of command.'" <u>Anderson v Yungkay</u>, 329 US 482, 485 (1947);
quoting: <u>Escoe v Zerbst</u>, 295 US 490, 493 (1935); <u>US ex rel Siegel v Thoman</u>, 156 US
353, 360 (1895).

5) The use of the word "any" means what it says, "any time he has spent in official
detention." The plain language of 18 USC §4001(a)("No citizen shall be imprisoned or
otherwise detained by the United States except pursuant to an act of congress.") has
been read by "the plain language [as a] ... proscri[ption against] detention of <u>any
kind</u> by the United States, absent a congressional grant of authority." <u>Howe v Smith,</u>
452 US 473, 480 n.3 (1981). Consequently, given the nature of the near 7 years of
imprisonment in the Metropolitan Correctional Center, 150 Park Row, New York, NY

10007 of the BOP qualifies as "official detention" irrespective of its lawfulness under §4001(a).

6) "The courts cannot disregard the express command of the statute." US v Crosthwaite, 168 US 375, 380 (1897). There is no "defer[ence] to an agency's interpretation that contravenes Congress 'unambiguously expressed intent.'" NY Public Interest Research Group v Johnson, 427 F3d 172 (2d Cir 2005)(internal quotation marks omitted). "Where the statutory language provides a clear answer, it ends there as well." Hughes Aircraft Co v Jacobson, 525 US 432, 438 (1999).

7) Therefore, since Congress has assigned the task of crediting prior incarceration toward a sentence to the BOP, that assignment cannot be exercised arbitrarily nor employed in any manner to defeat a constitutional right.

8) "[I]f the only objective of a state practice is to discourage the assertion of constitutional rights it is 'patently unconstitutional.'" Chaffin v Stynchcombe, 412 US 17, 32 n.20 (1973).

9) Consequently, the delegation of authority to the BOP to credit any previous time spent in official detention cannot operate to supress or supersede any constitutional right.

10) It is further elementary that "Courts may not 'prescrib[e] greater punishment than the legislature intended." Rutledge v US, 517 US 292, 134 Led2d 419, 425-26 (1996); quoting: Missouri v Hunter, 459 US 359, 366 (1983).

11) For this reason, it would be patently unconstitutional to sentence a person to a term of imprisonment greater than authorized by law, since such a sentence would clearly violate the Eighth Amendment prohibition against the imposition of any cruel of unusual punishments that would exceed the statutory authority of any penalty, where it is well established that an "unusual" punishment is one not authorized by Congress, and has been defined as a punishment that is:

> "out of the Judges Power, contrary to law and ancient practice,
> without Precedents or express law to warrant, unusual, illegal,
> or imposed by the Pretence to a discretionary Power. Moreover,
> the phrase 'cruell and unusual' is treated as interchangeable
> with cruel and illegal."
>
> Harmelin v Michigan, 501 US 957, 973-74 (1991)

12) Courts may only sentence a person pursuant to statute. They have no authority to impose greater punishment for they do not possess any common-law authority to create crimes or punishments, US v Hudson & Goodwin, 11 US 32 (1812) nor may they create equitable remedies that conflict with the constitution, INS v Pangilinan, 486 US 875, 883 (1988), and they certainly cannot create remedies sua sponte without statutoru authority from Congress, Grupo Mexicano des Desarrollo v. Alliance Bond Fund Inc., 527 US 308, 318 (1999).

13) Where a statute only authorized imprisonment in a penitentiary "for a period longer than one year," a habeas petitioner alleged that his sentence of less than one year in a penitentiary was "contrary to the laws of the United States," the Supreme Court found "that [i]t is our duty to inquire" into the jurisdiction of the district court, In re Mills, 135 US 263, 268-69 (1890), and expressly held:

> "the court below was without jurisdiction to pass any such sentences
> imprisment to be executed in a penitentiary are void. This is not
> a case of mere error, but one in which the court below transcended
> its powers."
>
> Id./at 270

2

14) Consequently, it is not a matter of discretion, but a profound constitutional principle that there can be **no** imprisonment beyond that authorized by Congress, which is a policy further illustrated by the plain language of 18 USC §4001(a).

15) In light of the plain language of §3585(b)(1), any term of imprisonment that is related to the offense must be credited on a mandatory basis arising from the plain language of the statute that was not intended to be discretionary nor constitutionally is it permissible that one may be punished by a deprivation of liberty greater than that intended by Congress.

## Relief Sought

16) Armstrong seeks a Declaratory Judgment that whatever time he has spent in civil contempt under order post-indictment to turnover the very alleged fruits of the crime for nearly 7 years specifically named within the indictment that **preceeded** the civil contempt, consitutes official detention "as a result of the offense," and thus is required by statute to be credited by the BOP and that constitutionally is required because no court may impose sanctions that are greater than authorized by Congress.

## Jurisdiction

17) This Court has diversity jurisdiction under Article III pursuant to 28 USC §1332 whereas Armstrong is domicile in the third circuit, Stifel v Hopkins, 477 F2d 1116, 1121 (6th Cir 1973) irrespective of his residence. The Court also has jurisdiction pursuant to 28 USC §1331 as a question arising from a federal law.

18) The Court has jurisdiction to grant a Declaratory Judgment pursuant to 28 USC §2201. "The declaratory judgment action is designed precisely to give one, potentially a defendant in a criminal prosecution, access to judicial determination ... when the facts indicate a sufficient basis for his belief that conduct he deems protected ... will subject him to such prosecution." Zwickler v Koota, 290 FSupp 244, 250 (EDNY 1968).

19) "[A] declaratory judgment action should be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Kidder, Peabody & Co., v Maxus Energy Group, 925 F2d 556, 562 (2d Cir 1991).

20) "It follows a general corollary to this rule that is either of these objective can be achieved the actions should be entertained ..." Id./925 F2d at 562; quoting: Soloman Bros v Carey, 556 FSupp 499, 502 (SDNY 1983) in turn quoting: Broadview Chem. Corp v Lochtite Corp, 417 F2d 998, 1001 (2d Cir 1969) cert denied 397 US 1064 (1970).

21) Armstrong contends that constitutionally he cannot be subjected to any further term of imprisonment after a plea to a single count conspiracy under 18 USC §371, that his maximum potential sentence is 5 years and thus after already serving almost 7 years for a questionable post-indictment civil contempt imposed by a parallel civil court upon motion of the Securities Exchange Commission ("SEC") and the Commodity Futures Trading Commission ("CFTC") under a order to testify and produce the very named alleged assets claimed to be the fruits of the crime, sufficiently relates to the charged offense requiring the same facts to be determined, requiring the Court to settle legal questions "touching the legal relations of parties having adverse legal interests." Aetna Life Ins v Haworth, 300 US 227, 240-41 (1937).

## Prisoner Litigation Reform Act

22) Armstrong has already litigated and it is now res judicata that as a civil contemnor he is not within the scope of the Prisoner Litigation Reform Act ("PLRA") and is not

required to pay any fees nor is he required to exhaust any administrative remedies as previously held in Armstrong v USA, Metropolitan Correctional Center, 03 Civ 4801 (MBM) decided by former Chief Judge Michael B. Mukasey on June 9th, 2004 (now retired).

23) It was there held that the definition of a "prisoner" within the PLRA was clearly defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions or parole, probation, pretrial release, or diversionary program." 28 USC §1915(h).

24) Chief Judge Mukasey squarely held that "a civil detainee does not fall within the purview of the PLRA's definition of "prisoner," because the detention is a civil-commitment for non-punitive purposes" and after citing the Eighth, Ninth, and Eleventh Circuits, Perkins v Hedricks, 340 F3d 582 (8th Cir 2003); Troville v Venz, 303 F3d 1256, 1259-60 (11th Cir 2002); Page v Torrey, 201 F3d 1136, 1139-40 (9th Cir 2000)(post-expiration detainee is no longer a "prisoner"). In light of these decisions, it appears that plaintiff is not subject to the PLRA's full payment provision." Id./Slip at 2.

## Parties

25) Armstrong is a civil contemnor held without statutory authority since January 14th, 2002, and is a native born white American male resident of the State of New Jersey as his legal domicile, 314 South Lippincott Avenue, Maple Shade, NJ 08052. His current mailing address remains:

> Martin A. Armstrong
> Metropolitan Correctional Center
> #12518-050
> 150 Park Row
> New York, NY 10007

26) Harley G. Lappin is the Director of the BOP and is domicled in Washington, DC in his official capacity

> Harley G. Lappin, Director
> Federal Bureau of Prisons
> Central Office
> 320 First Street, NW
> Washington, DC 20534

## Venue

27) Venue in a civil action wherein jurisdiction is founded upon diversity of citizen-ship may only be brought in a judicial district where the defendant resides, see 28 USC §1391(a). In the instant case, the BOP is domicle within the District of Columbia and the relief sought is a Declaratory Judgment regarding the crediting of time for a prior imprisonment which is an administrative act that is not a local decision by any individual warden or prison, but of the agency.

## District Court Proceedings

28) Armstrong is, and at all times hereinafter mentioned, has been a natural born citizen of the United States, and at all times hereinafter mentioned has been a personally named defendant in the following actions and proceedings in the Southern District of New York ("SDNY").

(a) SEC v Princeton Economics International, Ltd,et al 99-civ-9667(RO)

(b) Commodity Futures Trading Commission v Princeton Economics Int'l, et al
99-civ-9669(RO)

(c) United States v Martin A. Armstrong, 99-Cr-997 (LMM)

29) The civil action set forth in paragraph 28(a), supra, (the "SEC Action") was
commenced on or about September 13, 1999 by the improper filing in the SDNY of
a civil complaint against Armstrong alleging securities fraud by the means of
issuing private unsecured corporate notes issued by foreign corporations, sold
by registered Japanese broker dealers exclusively in Japan, repayable in Japanese
yen, to profressional major Japanese corporations and directors thereof.

30) The SEC sought, and was granted in the SDNY the appointment of a receiver seizing
in substance and effect wholly alien corporations without serving same corporations,
denying them any ability to hire counsel, and never made any appearance whatsoever,
thus depriving the district court of personal jurisdiction to have even imposed
a receiver.

31) Once the receiver was in place, he promptly consented to a permanent injunction
on behalf of the corporations within about 30 days.

32) The action set forth in sub-paragraph 28(b), supra, (the "CFTC Action"), was
commenced about the same time on or about September 13, 1999, by the filing in
the SDNY of a civil complaint against Armstrong alleging that he ran an unregis-
tered commodity pool when in fact there was never any such solicitation, no
documents to support a pooling of funds in which anyone shared, and contrary
to the bulk of the private notes that constituted merely fixed rate notes paying
and flat interest rate in yen on an unsecured basis.

33) The CFTC sought and was granted co-benefit of the receiver, but because the CFTC
allegations most likely appeared to be frivolous, the receiver never answered
the complaint on behalf of the corporate defendants neither did he plead to any
consent injunctions.

34) The criminal action set forth in paragraph 28(c), supra, (the"Criminal Action"),
was commenced on or about September 13, 1999 **before** the SEC Action and CFTC Action.

35) In fact, the SEC Action and CFTC Action (the "Civil Actions") were coordinated
with the US Attorney and were not not filed in advance of the Criminal Action in
order to ensure that Armstrong would be unable to attend and explain anything at
the TRO that would have possibly placed the request for a receivership in jeopardy,
and thus the Civil Actions were deliberately held back until Armstrong self-
surrendered in Trenton, New Jersey to the federal court.

36) Once the receivership was put in place, all funds were frozen corporately and
personally.

37) Armstrong was released by the district court on September 13, 1999 on $5 million
bail, and declined to waive his indictment upon advice of counsel and instead
asserted his Speedy Trial Rights in an effort to save the corporations and more
than 200 jobs that were at stake.

38) The government did not want to do to trial after realizing that Armstrong had not
taken a missing $1 billion as alleged by Republic Nat'l Bank, and then used the
Civil Actions to (1) strip Armstrong of all counsel civilly and remove counsel of
choice in the parallel criminal case depriving Armstrong all resources whatsoever
to even put on a defense, and (2) to then create a contempt demanding that he
turnover the only alleged fruits of a crime being antique coins.

39) Armstrong was then stripped of his personal rights post-indictment to assert the Fifth Amendment privilege and his absolute right to remain silent as a function of our adversary system of justice codified at 18 USC §3481 with citation to Braswell v US, 487 US 99 (1988) claiming Armstrong was a corporate officer merely holding these assets for the corporation while simultaneously being indicted for the fraud with these same assets being the fruits of the crime thus not merely using inconsistent theories between the civil and criminal cases, but in effect the Civil Actions were judicially estopped from taking such a contrary position in the first instance.

40) Of course, the Braswell holding applied only to books and records and had never been applied, nor could it be applied, post-indictment to deprive Armstrong of his personal post-indictment rights to remain silent and not to be compelled to be a witness against himself irrespective of whether or not it was incriminating pursuant to the very core of American justice, the adversary system whereby a defendant is absolutely immune from any compulsion whatsoever and is entitled as a matter of law to sit mute for it is the government's burden to prove that he is guilty, not that he himself is innocent.

41) Thus, on January 14, 2000, Armstrong, despite being post-indictment, was held in civil contempt under orders to turn over the very named fruits of the crime for which he already stood indicted, constituting an abuse of process never before attempted by the SEC, CFTC or any agency in the history of this nation.

42) Because the district court refused to cite the source of his authority, claiming merely an inherent power under equity to provide the remedy sought by the SEC and CFTC even against the common-law principle that no one accused of being a thief can be compelled to turn over that which he has been alleged to have stolen in order to prove him guilty, the Second Circuit decline three times to grant any right to  direct appeal despite such a right established by Congress codified at 28 USC §1826.

43) Since the civil contempt is constitutionally impermissible post-indictment, and because it represents the very conduct of the indictment, whatever time Armstrong has spent in jail must be credited pursuant to 18 USC §3585(b)(1).

44) After almost 7 years, unable to gain appellate review to vindicate any rights in a timely fashion, by whatever clandestine means of behind-the-scene-machinations, the judge who had presided over the criminal action, Lawrence M. McKenna, was removed without explanation and the case assigned directly to a specific judge John F. Kennan who then decided to force a trial without any appellate decision regarding the constitutionality of the contempt.

45) Armstrong was thus starting to prepare for a insane trial that would most likely be found unconstitutional in the final analysis, when the government finally offered to drop all charges admitting they did not wish to go to trial, and offered a single conspiracy count of a statutory maximum of 5 years under 18 USC §371, allowing Armstrong to sue the BOP (this action) in order to achieve credit for the time spent on the contempt, which has prompted this filing.

46) Given that the Civil Actions were coordinated and memorialized in writing known as the Memorandum of Agreement ("MOA") (Exhibit #1) in which the receiver agreed to withhold all evidence from Armstrong §13(b) contrary to FRCvP, share such informa-tion exclusively with the SEC, CFTC and the parallel criminal prosecution §16, demonstrates the abuse of process to which Armstrong has been subjected that even violated Article III by joing the Civil Actions to aid the criminal prosecution, justifying that Armstrong be credited with all time on the contempt.

# G E N E R A L
## S T A T E M E N T   O F   C L A I M S

### FIRST CLAIM

47) Upon the commencement of the Criminal Action, Armstrong became vested with his right to remain absolutely silent codified at 18 USC §3481, which is distinguished from the Fifth Amendment privilege which protects all citizens in a prospective manner, whereas upon indictment the full panoply of rights attach including those under the Sixth Amendment, but also the presumption of innocence that affords to the accused the absolute right to remain free to decide whether or not he shall be a witness on his own behalf codified at §3481 (herein "Post-Indictment Rights"), and his rights under Substantive Due Process to remain free from any means of torture designed to compel a confession which has been defined by Congress as:

**Torture Victim Protection Act,** Pub.L.102-256, 106 Stat 73, March 12, 1992

Sec 3 (b)(1) the term "torture" means "any act, directed against an individual in the offender's custody ... by which severe pain or suffering ... whether physical or mental, is intentionally inflicted on that individual ... information or a confession, punishing that individual for an act that individual ... has committed or is suspected of having committed ... "

(herein "Substantive Rights")

48) The BOP in holding Armstrong for nearly seven years, was itself charged with the duty not to arbitrarily imprison citizens except pursuant to an act of congress codified at 18 USC §4001(a) for which no such authority has ever been obtained (herein "Arbitrary Imprisonment Rights")

49) Because the Constitution is negative, not positive, and functions as a restraint upon power rather than a shopping list of rights, Armstrong became clearly vested with his Post-Indictment Rights, his Substantive Rights, and his Arbitrary Imprisonment Rights that were all further protected by the criminal code 18 USC §241, all persons involved in the deprivation of those rights had a clear limitation that was negatively defined restricting the power they exercised in the name of the United States as a whole.

50) Since there is no constitutional basis to deprive any citizen of his fundamental rights to equal protection of the laws, Armstrong thus maintains that he has been subjected to an abuse of process that was never before attempted in American history, nor was it so authorized post-Star Chamber.

### SECOND CLAIM

#### A CLAIM FOR CREDIT OF TIME SERVED

51) Armstrong hereby incorporates by reference as if fully set forth herein each of the allegations set forth in paragraphs 1 to 50 above.

52) By virtue of the unlawful interference with Armstrong's lawful exercise of his "Constitutionally Protected Rights" (defined as his Post-Indictment Rights and Substantive Rights), and the failure of the BOP to comply with 18 USC §4001(a), Armstrong seeks credit for all time spent in jail beginning with January 14th, 2000.

53) Armstrong thus seeks a Declaratory Judgment that he is entitled to credit for time spent in the BOP system on civil contempt either:

    (a) from inception commencing January 14th, 2000, or

    (b) from July 6th, 2000, the ending date for the only possible lawful period of civil contempt being 18 months pursuant to Congress codified at 28 USC §1826.

54) Armstrong further seeks that any time spent beyond the criminal sentence of 60 months shall be credited against any period of Supervised Release.

### P R A Y E R   F O R   R E L I E F

WHEREFORE, Armstrong prays that an award in credit for time already served on civil contempt be credited toward his sentence of 60 months and his sentence of 3 years supervised release as a result of a post-indictment order directing the turnover of the direct evidence of the alleged crime previously charged by indictment.

Hence, Armstrong seeks a Declaratory Judgment to clearly define his rights to credit of time already spent in jail.

Respectfully submitted;

Martin A. Armstrong
MCC #12518-050
150 Park Row
New York, NY 10007

Dated: October 29th, 2006
    New York, New York

DOCKD

EXECUTION COPY

Original

PRINCETON ECONOMICS INTERNATIONAL LTD.

Memorandum of Agreement

among

*U.S. DISTRICT COURT*
*OCT 15 1999*
*S.D. OF N.Y.*

A. MARK HOMAN, DIPANKAR GHOSH AND JOSEPH CONNOLLY
As Joint Provisional Liquidators of Princeton Economics International Ltd.
under Order of the Supreme Court, Providenciales, Turks and Caicos Islands

and

ALAN M. COHEN,
As Receiver in respect of Princeton Economics International Ltd. and
Princeton Global Management Ltd. under Order of United States
District Court for the Southern District of New York

Dated: October 7, 1999

1.   *Definitions.*  Annex A to this MOA contains a list of the defined terms used herein.

2.   *U.S. Cases.*  On September 13, 1999, the SEC and the CFTC commenced the U.S. Cases. Also on that date, HON. LEWIS A. KAPLAN, U.S.D.J., signed the First TRO. On September 19, 1999, HON. RICHARD OWEN, U.S.D.J., signed the Second TRO.

3.   *TCI Case.*  On September 17, 1999, PEI petitioned the TCI Court to appoint the JPLs and on that date HON. DERRICK REDMAN signed an order appointing them.

4.   *Jurisdictional Dispute and Conflicting Orders.*  Both Courts purport to have jurisdiction over some or all of the Assets. There are disputes among the Receiver and JPLs as to which has what rights with respect to which Assets. Nothing contained herein is intended to resolve such questions of jurisdiction or rights, and the parties reserve all of their rights in respect thereof.

5.   *Principles Underlying This MOA.*  The Receiver and JPLs urgently desire to resolve their disputes consensually with a view to addressing promptly and effectively the pressing need for efficient and comprehensive administration of the Assets. The Receiver and the JPLs agree that each of them has duties to identify, recover, preserve and protect the Assets in an efficient and cost-effective manner, and to maximize the recoveries of creditors in respect thereof, and agree that their respective actions and decisions shall be in furtherance of such duties.

[NY] 1701&001:MISC:96/0105417.rev.wpd

06 2221

**FILED**

**DEC 2 8 2006**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Based on the foregoing mutual agreement, the Receiver and the JPLs believe they will be able effectively to allocate responsibilities for administration of PEI and other members of Group between them and, to that end, have agreed that certain activities may be undertaken by each of them in their individual discretion and that, during the term of the MOA, all their other activities shall either be mutually agreed upon by Written Authority or authorized by order of Both Courts.

6. *Basic Agreement.* From and after the effective date of this MOA and until such time or times as the agreement expressed in this MOA is superseded or terminated as provided herein, the Receiver and the JPLs agree as follows:

(a) Except as expressly provided herein and in Annex B hereto, the Receiver and the JPLs shall take action in respect of the Cases and the Assets if and only if such actions are pursuant to the joint Written Authority of the Receiver and the JPLs. In the event the Receiver and the JPLs disagree with respect to any course of action proposed by either of them, such action shall be taken only upon approval thereof by orders of Both Courts. The Receiver and the JPLs each shall have the right to commence proceedings in Both Courts seeking such a determination on reasonable notice to the other party and to the SEC and the CFTC.

(b) Any funds which at any time come under the control of the Receiver or the JPLs shall be deposited into appropriate, segregated accounts controlled by such party and shall be invested in a manner agreed by the Receiver and the JPLs, *provided that*

(A) the Receiver shall pay, from funds in the Receiver's control (i) the reasonable fees, costs and expenses of the Receiver and its professionals upon U.S. Court approval thereof (as well as reasonable retainers to any professionals employed by the Receiver pending payment), (ii) up to $1.0 million in respect of reasonable fees, costs and expenses of the JPLs and their professionals that are payable in accordance with ordinary and customary practice in proceedings before the TCI Court, to the extent funds in the control of the JPLs from time to time are insufficient therefor (as well as reasonable retainers to the JPLs and any professionals employed by them pending payment), and (iii) such other amounts as may be necessary to carry out activities permitted under Annex B hereof or otherwise permitted to be expended in accordance with the procedures set forth in paragraph 6(a) above, and

(B) the JPLs shall pay, from funds in the JPLs' control (i) the reasonable fees, costs and expenses of the JPLs and their professionals (including any appropriate retainers to the JPLs and professionals employed by either of them pending payment), and (ii) such other amounts as may be necessary to carry out activities permitted under Annex B hereof or otherwise permitted to be expended in accordance with the procedures set forth in paragraph 6(a) above.

2

(c)   Upon prior consultation with the JPLs, the Receiver shall be permitted to investigate, prosecute and/or settle claims and causes of action against any third party arising under the laws of the United States (including the common law thereof), regardless of where such third party may be located. In the event the JPLs disagree with any course of action proposed by the Receiver with respect to any such investigation, prosecution and/or settlement, the JPLs shall have the right to object to such action in the U.S. Court, whereupon such action shall proceed only if the U.S. Court determines that such investigation, prosecution or settlement is in the best interests of creditors. Subject to the preceding sentence, the JPLs shall take all reasonable steps to cooperate to facilitate such investigation, prosecution or settlement to the maximum extent permitted by law.

(d)   Upon prior consultation with the Receiver, the JPLs shall be permitted to investigate, prosecute and/or settle claims and causes of action against any third party arising under the laws of any jurisdiction other than the United States (including the common law of any such jurisdiction), regardless of where such third party may be located. In the event the Receiver disagrees with any course of action proposed by the JPLs with respect to any such investigation, prosecution and/or settlement, the Receiver shall have the right to object to such action in the TCI Court, whereupon such action shall proceed only if the TCI Court determines that such investigation, prosecution or settlement is in the best interests of creditors. Subject to the preceding sentence, the Receiver shall take all reasonable steps to cooperate to facilitate such investigation, prosecution or settlement to the extent permitted by law.

(e)   Promptly upon execution of this MOA by the Receiver and the JPLs and its approval by Both Courts, the Receiver and the JPLs shall meet to discuss all actions taken prior to that date with respect to the identification, recovery, preservation and protection of the Assets, and all information resulting therefrom. The further purpose of this meeting shall be to consult regarding the development and implementation of the strategic action plans of the Receiver and the JPLs, respectively. Thereafter, the Receiver and one or more of the JPLs shall confer by phone at least weekly and shall meet in person at least monthly, unless otherwise agreed by the Receiver and the JPLs. The Receiver and the JPLs shall endeavor to consult with the SEC and the CFTC from time to time to determine whether either agency or both have the ability or the willingness to assist with computer services, analysis of markets and/or position and investigative or other services.

(f)   The terms set forth in Annex B are incorporated by reference herein, and the Receiver and the JPLs shall be permitted to take any action permitted under Annex B without further consent or court order.

7.   *Efficiency and Minimization of Redundant Work.* The Receiver and the JPLs desire as rapidly as possible to divide as between themselves the work of

3

administering The Cases, to the extent not specifically set forth in paragraph 6 of this MOA, in such manner as will minimize duplicative work, expedite administration, control cost and accomplish the speedy and efficient conclusion thereof. To that end, they intend in good faith, acting collegially, to divide such work amongst themselves in such manner as will accomplish the foregoing objectives. As and when they agree to do so they will document their understandings, which upon execution thereof by Written Authority of each and the obtaining of any necessary court orders, will operate to supplement, amend or modify, as applicable, paragraph 6 hereof to the extent provided therein. Without limiting the generality of the foregoing, the Receiver and the JPLs shall cooperate in good faith to maximize the net realization in respect of causes of action of members of the Group against third parties. The Receiver and the JPLs will endeavor to keep the SEC and the CFTC reasonably apprised of their activities to the extent such activities could have a material affect on the Assets (including, as necessary, providing copies of applicable Written Authorities), *provided*, that the Receiver and the JPLs shall not be required to take any action that could result in the waiver of any privilege of any Group entity or otherwise adversely affect any Group entity or its creditors.

8.    *Disputes Among the Parties.*  The Receiver and the JPLs will work together in good faith to avoid or minimize disagreements amongst themselves and to resolve expeditiously and fairly any disputes which may arise. In the event that the foregoing procedures result in impasse, except to the extent specifically provided in paragraph 6 of this MOA, they will promptly submit the dispute to Both Courts, and the dispute shall be resolved in such manner as shall be approved by Both Courts. If Both Courts fail to reach a common resolution, then the impasse shall continue, subject to termination of the MOA pursuant to paragraph 12 below.

9.    *Necessary Court Approvals.*  As and when applicable law requires any matter to be submitted to Either Court for approval, it shall be submitted by the Receiver or the JPLs, as applicable, upon prior reasonable written notice to the other and to the SEC and the CFTC, and the nonsubmitting party shall be authorized to appear and be heard with respect to any such request for approval. Prior to submitting any matter to Either Court for approval, the Receiver or the JPLs (whichever intends to seek such approval) shall contact the other to determine whether the approval of Both Courts is required. If the Receiver and the JPLs agree that the approval of Both Courts is required, the Receiver and the JPLs shall take such actions as may be necessary or appropriate to request that Both Courts preside jointly over the request for approval, or to have Both Courts coordinate any hearings as may be required in such a manner as to promote the timely and efficient review of such request by Both Courts. In making its determination, each of the U.S. Court and the TCI Court may take into account the views, if any, of creditors and of regulatory agencies that may be presented to such courts.

10.    *TROs.*  Immediately after execution hereof by each party, the Receiver and the JPLs will jointly request the U.S. Court to modify the First TRO and the Second TRO to the extent necessary to authorize and permit the JPLs and the Receiver to enter into and

act in accordance with the MOA, and request the TCI Court to enter an order authorizing and permitting the JPLs to enter into and act in accordance with the MOA. Should such orders be obtained and not be stayed, both the Receiver and the JPLs will proceed expeditiously to implement the actions described herein and in Annex B hereto.

11. *Existing Orders; Effective Date of This Agreement.* Except as provided in the following sentence, the First TRO, the Second TRO and the TCI Order shall remain in effect. This MOA shall become effective at such time as (i) Both Courts shall have approved identical versions of this MOA, (ii) the First TRO and the Second TRO shall have been amended to the extent necessary to permit the JPLs and the Receiver to enter into and act in accordance with the MOA, and (iii) the TCI Court shall have entered an order authorizing and permitting the JPLs to enter into and act in accordance with the MOA. Prior to effectiveness of this MOA, the JPLs and the Receiver shall endeavor to comply with it in all material respects to the maximum extent they determine they are permitted to do so by applicable law and court orders.

*an application by a party and upon*

12. *Termination of this MOA.* (a) This MOA shall terminate on the earliest of the following (i) whenever Both Courts so order and such orders have become Final Orders or (ii) this MOA shall not have become effective as provided in paragraph 11 above by October 15, 1999 or (iii) Alan M. Cohen or one of his partners at O'Melveny & Myers LLP as his successor as the Receiver shall cease to be incumbent in such capacity or (iv) all of A. MARK HOMAN, DIPANKAR GHOSH and JOSEPH CONNOLLY and their partners at PricewaterhouseCoopers as their successors as JPLs shall cease to be incumbent in such capacity or (v) Either Court, upon prior notice to the parties and after ~~consultation with the other Court,~~ orders that the MOA should be terminated.   *a her*

(b) In the event of termination of the MOA as a consequence of an event referred to in clause (iii) or (iv) of paragraph 12(a) above, any successor to the party whose incumbency has terminated may assume the duties under the MOA of the terminated party and revive the MOA with the written consent of the other party to the MOA. However, notwithstanding any such revival, the party whose incumbency has terminated shall have no duties hereunder after such termination is effective, nor any liability or responsibility hereunder for any action or failure to act that occurs after such party's incumbency terminated.

13. *Information.* (a) The Receiver and the JPLs each hereby agrees to share on an unlimited basis, as amongst them, all information regarding the Group and the Assets which may come under their possession or control and which they may lawfully share and to keep each other fully abreast of their activities and of developments known to them. The Receiver and the JPLs will ask Both Courts to sign appropriate orders to the effect that communications amongst them do not waive any attorney-client, work product and all other privileges recognized under any applicable law. In addition, the Receiver and the JPLs shall enter into a common interest or joint defense agreement in a form acceptable to their respective counsel with the objective of protecting any such privilege.

[NY] 17818:0x3.M1EC%4:703419 rev.wpd

In the event either the Receiver or the JPLs are advised by counsel that sharing any information could result in a waiver or relinquishment of any such privilege, they will consult with the other party in order to determine how to proceed consistent with their respective duties.

(b)    The Receiver and the JPLs acknowledge and agree that they shall not and they shall direct their respective agents and representatives not to provide any non-public information regarding Group or its Assets to Martin Armstrong, Martin Armstrong, Jr., Victoria Armstrong, any person or entity known to be under their direct or indirect control or acting in concert with any of them, any other former officer, director or employee of PEI or PGM, unless the provision of such information is either (a) agreed to by the Receiver and the JPLs, (b) required by applicable law, or (c) required by order of Either Court.

14.    *Creditors' Committee.* The JPLs and the Receiver will use their reasonable efforts to support the formation of a creditors' committee in the TCI Case and to try to obtain permission for the SEC and the CFTC to attend meetings and participate in deliberations, but not to vote. The Receiver and the JPLs acknowledge and agree that they will take such steps as may be reasonably available to them as a matter of law to preclude Martin Armstrong, Martin Armstrong, Jr., Victoria Armstrong and any person or entity under their direct or indirect control, or acting in concert with any of them, or any other former director, officer or employee of PEI or PGM from becoming a voting or ex officio member of such creditors' committee.

15.    *Appearances.* Each of the JPLs and the Receiver will notify the other in advance of all activities in its Court and each shall have the right to appear and be heard in Both Courts without opposition from the other.

16.    To the extent such actions would not violate any duties of the JPLs or the Receiver, respectively, under applicable law (A) the JPLs and the Receiver shall each take all reasonable steps to cooperate with the CFTC, the SEC and the USAO in connection with their investigation and prosecution of civil, administrative and criminal matters relating to Martin A. Armstrong, PEI, PGM and any of their subsidiaries, affiliates, officers, directors or employees, and (B) the JPLs and the Receiver shall endeavor to provide the CFTC, the SEC and the USAO with reasonable access to books and records within their possession, custody or control, to the extent permitted by law, wherever situated, whether within the United States or outside the United States.

17.    *Notices.* Any notices or other communications required or permitted hereunder shall be sufficiently given if sent by overnight courier, postage prepaid, or by facsimile (and confirmed by telephone with the recipient) addressed as follows:

if to the Receiver, to:

Alan M. Cohen, Esq.
c/o O'Melveny & Myers, LLP
153 East 53rd Street
New York, New York 10022
Fax: 212-326-2061

with a copy to:

O'Melveny & Myers, LLP
153 East 53rd Street
New York, New York 10022
Attn: Martin Glenn
Fax: 212-326-2061

if to the JPLs, to:

Mr. A. Mark Homan
PricewaterhouseCoopers
Plumtree Court
London EC4A 4HT
England
Fax: 44 (0) 171 822 4652

and

Mr. Dipankar Ghosh
PricewaterhouseCoopers
Plumtree Court
London EC4A 4HT
England
Fax: 44 (0) 171 822 4652

and

Mr. Joseph P. Connolly
PricewaterhouseCoopers
Abacus House
Providenciales
Turks & Caicos Islands
British West Indies
Fax: 649-946-4892

with a copy to:

7

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10021
Attn: Stephen H. Case
Fax: 212-450-4800

or such other address as shall be furnished in writing by such party, and any such communication shall be deemed given as of the time when such communication is received.

18.  *Amendments.*  This Agreement may be amended in writing by agreement of the parties, *provided* that no such amendment shall become effective until approved by Both Courts.

19.  *Limited Capacity.*  The Receiver and the JPLs execute this MOA solely in their capacities as Receiver and JPLs respectively, and not in their individual capacities, and their respective duties, obligations and liabilities hereunder are limited accordingly.

A. MARK HOMAN, as Joint
Provisional Liquidator of PEI

DIPANKAR GHOSH, as Joint
Provisional Liquidator of PEI

JOSEPH CONNOLLY, as Joint
Provisional Liquidator of PEI

ALAN M. COHEN, as Receiver
of PEI and PGM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X
                                    :
MARTIN ARMSTRONG,                   :
                                    :
                 Plaintiff,         :
                                    :
      -against-                     :
                                    :
UNITED STATES OF AMERICA, METROPOLITAN :
CORRECTIONAL CENTER,                :
                                    :
                 Defendant.         :
———————————————————————X



ORDER

03 Civ. 4801 (MBM)

   By order dated June 27, 2003, this Court dismissed
plaintiff's complaint for failure to submit a completed and
executed Prisoner Authorization Form to comply with the Prison
Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110
Stat. 1321 (1996).  On July 14, 2003, plaintiff submitted the
instant motion for reconsideration pursuant to Rule 60(b) of the
Federal Rules of Civil Procedure.  The motion is GRANTED for the
reasons stated below.

## Motion for Reconsideration

   Plaintiff contends in his motion for reconsideration that
since he is committed to the Metropolitan Correctional Center
("MCC") pursuant to a civil contempt order, he is not a
"prisoner" subject to the PLRA within the meaning of 28 U.S.C. §
1915(h).[1]  The Second Circuit and this Court have not previously

---

[1] 28 U.S.C. § 1915(h) states:

     As used in this section, the term "prisoner"
     means any person incarcerated or detained in
     any facility who is accused of, convicted of,
     sentenced for, or adjudicated delinquent for,
     violations of criminal law or the terms and

considered the issue of whether the PLRA's full payment provisions are applicable to a civil detainee. Other courts that have addressed the issue, however, have held that a civil detainee does not fall within the purview of the PLRA's definition of "prisoner," because the detention is a civil-commitment for non-punitive purposes. <u>See</u> <u>Perkins v. Hedricks</u>, 340 F.3d 582 (8th Cir. 2003) (person held on pure civil commitment is not a "prisoner" within meaning of PLRA); <u>Troville v. Venz</u>, 303 F.3d 1256, 1259-60 (11th Cir. 2002) (same); <u>Kolocotronis v. Reddy</u>, 247 F.3d 26, 728 (8th Cir. 2001) (person held on civil commitment following verdict of not guilty by reason of insanity is not a "prisoner"). <u>Cf</u>. <u>Page v. Torrey</u>, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (post-expiration detainee is no longer a "prisoner"). In light of these decisions, it appears that plaintiff is not subject to the PLRA's full payment provision. Therefore, the Court's June 27, 2003 order and judgment dismissing plaintiff's complaint for failure to submit a completed and executed Prisoner Authorization Form in compliance with the PLRA is hereby vacated. I grant plaintiff's request to proceed *in forma pauperis* and direct him to submit an amended complaint within 60 days of the instant order as directed below.

## BACKGROUND

Plaintiff's complaint essentially challenges the general

--------

conditions or parole, probation, pretrial release, or diversionary program.

Commission at 7 World Trade Center – 13th Floor, New York, New York, 10048, to the attention of Eric M. Schmidt, Esq., or such other place as counsel for the Commission may direct in writing, by the most expeditious means available. The Commission shall have until 11 a.m. ~~Sept. 21~~, 1999, ~~at 5:00 p.m.~~, to serve any reply papers upon the defendants by the most expeditious means available.

## XX.

IT IS FURTHER ORDERED that this Order shall be, and is, binding upon each of the Defendants, and each's officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise.

## XXI.

IT IS FURTHER ORDERED that a copy of this Order to Show Cause be served upon Defendants before ~~5:00~~ 6:30 p.m. Sept 13, 1999, by personal delivery, facsimile, or overnight mail to the ~~offices of~~ counsel for Princeton Economics at 214 Carnegie Center, Suite 303, Princeton, New Jersey 08540.

UNITED STATES DISTRICT JUDGE
PART I

Issued at: 5:55 p.m.
September 13, 1999

IT IS FURTHER ORDERED that this Order is granted also on the motion of the CFTC in no. 99 Civ. 9669 and runs also to its benefit.

18

A  81

B.      no creditor of or claimant against any of the Defendants, or any person acting on

behalf of such creditor or claimant, shall take any action to interfere with the

taking control, possession, or management of the assets transferred to the

temporary receiver under this Order, nor interfere in any way with the exclusive

jurisdiction of this Court over the receivership estate.

## XVIII.

IT IS FURTHER ORDERED that discovery in this Action is expedited as follows: pur-

suant to Rules 26, 30, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure ("FRCP"), and

without the requirement of a meeting pursuant to FRCP Rule 26(f), the Commission may:  (a)

take depositions, subject to three (3) days notice by facsimile or otherwise; (b) obtain the

production of documents, within three (3) days from service by facsimile or otherwise of a request

or subpoena, from Defendants, their current and former employees, agents, officers, servants,

financial or brokerage institutions, clients, accountants, attorneys, and any other persons,

including, but not limited to, and any other persons or entities that have or had a business

relationship with Defendants; and (c) obtain other discovery from Defendants, including

interrogatories and requests for admission, within three (3) days from the date of service by

facsimile or otherwise, of such other discovery requests, interrogatories, or requests for

admission.

## XIX.

IT IS FURTHER ORDERED that Defendants shall serve any opposing papers in

response to this Order to Show Cause above no later than _September 20_, 1999 at

12 noon

5:00 p.m. Service shall be made by delivering the papers to the Northeast Regional Office of the

17

**XVI.**

IT IS FURTHER ORDERED that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, Defendants, and each of them, or any person or entity acting at their direction or on their behalf, are hereby enjoined and restrained from destroying, altering, concealing or otherwise interfering with the access of the plaintiff to any and all documents, books and records which are in the possession, custody or control of Defendants, their agents, employees, servants, accountants, financial or brokerage institutions, and attorneys that refer, reflect or relate to the allegations of the Complaint, including, but not limited to, documents, books and records referring, reflecting or relating to the Defendants' business operations, the offers or sales of securities and the use of proceeds therefrom.

**XVII.**

IT IS FURTHER ORDERED that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction:

A.    each of the Defendants and each of their creditors, officers, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, be and hereby are, restrained and enjoined from filing a voluntary or involuntary petition in bankruptcy on behalf of or against each of the Defendants, without first seeking leave from this Court, with at least twenty-four (24) hours notice to the Commission. Leave shall be granted only after a hearing before this Court and upon such conditions as necessary to protect this Court's jurisdiction over the subject matter of this action; and

16

A 79

## XV.

IT IS FURTHER ORDERED that, subject to all rights and privileges available under the law, Armstrong and the Corporate Defendants and their officers, directors, agents, servants, employees and attorneys-in-fact shall:

A.  provide to the temporary receiver all information requested relating to the past and present operations, activities and condition of the Corporate Defendants and shall take no action, directly or indirectly, to hinder, obstruct, delay or otherwise interfere in any manner with the actions of the temporary receiver or any other person engaged or employed by the temporary receiver to assist him in carrying out his duties and obligations herein;

B.  provide to the temporary receiver forthwith access to and a written description and the location of all of the following documents which they have within their current possession, custody or control:

1)  all lists, files and data bases of the Corporate Defendants' sales of securities to investors covering the period from January 1, 1996 to the present, and

2)  all accounting and financial books and records of original entry and, as requested by the temporary receiver, all supporting documentation and the names of all persons making entries in each such book or record.

C.  transfer forthwith to the temporary receiver all assets of the Corporate Defendants which they have in their current possession, custody or control.

15

receiver is authorized to pay from the receivership estate to himself and any person engaged or employed by him (including, without limitation, counsel, accountants and such other consultants as he may determine to be necessary) a reasonable retainer to secure payment of the costs, fees and expenses of the temporary receiver or such person engaged or employed by him, such retainer to be held pending approval of such costs, fees and expenses by the Court.

## XIV.

IT IS FURTHER ORDERED that the temporary receiver and all persons who may be engaged or employed by the temporary receiver to assist him in carrying out his duties and obligations hereunder shall not be liable for any act or omission of the temporary receiver or such person, respectively, or any of their partners, employees, or agents, unless it shall be proven that the temporary receiver or such other person acted in bad faith or failed to act in a circumstance where the temporary receiver or such other person had a legal duty to do so. This provision shall apply to claims based on conduct during the term of any agreement that may be entered into between the temporary receiver and any other person who may be engaged or employed by the temporary receiver hereunder, even if such claims are filed after the termination of any such agreement.

Defendants shall indemnify, defend and hold harmless the temporary receiver and his law firm and his or its agents, employees, consultants, successors, and assigns, from and against all actions (pending or threatened and whether at law or in equity in any forum), liabilities, damages, losses, costs, and expenses, including but not limited to reasonable attorneys' and other professionals' fees, arising from conduct or omission of the temporary receiver or his law firm or his or its agents, employees, and consultants under the terms of this Order.

14

A   77

Armstrong, at any time from January 1, 1996, to the date of the
accounting, describing the source, amount, and date of disbursement of
each of the items listed;

4.    the names, last known addresses, and account-identifying information of all
financial institutions, bailees, debtors and other persons and entities that are
currently holding any money, assets, funds, securities, real or personal
property for the direct or indirect benefit of the Corporate Defendants or
Armstrong.

### XII.

.IT IS FURTHER ORDERED that the temporary receiver shall not be required to post
any bond or security, provided however that if the temporary receiver chooses to procure such a
bond or security, the Defendants shall pay the reasonable costs and expenses thereof.

### XIII.

.IT IS FURTHER ORDERED that Defendants shall pay the reasonable costs, fees and
expenses of the temporary receiver incurred in connection with the performance of his respective
duties described herein, including, but not limited to, the reasonable costs, fees and expenses of all
persons who may be engaged or employed by the temporary receiver to assist him in carrying out
his duties and obligations. All applications for costs, fees and expenses of the temporary receiver
and those employed by him shall be made by application to the Court setting forth in reasonable
detail the nature of such costs, fees and expenses. Upon approval of any such applications, the
temporary receiver may pay himself and those employed by him from the assets of the Defendants
under his control. Notwithstanding anything to the contrary in this Paragraph XIII, the temporary

13

(f)     the dates, amounts, and sources of any funds paid by any of
the Corporate Defendants on any such security, if
applicable;

3.     Any other monthly income and expenses of each of the Corporate
Defendants;

B.     report to the Court and the parties by December 13, 1999, subject to such
reasonable extensions as the Court may grant, the following information for each
of the Corporate Defendants:

1.     all assets, liabilities, money, funds, securities, and real or personal property
currently held directly or indirectly by or for the benefit of the Corporate
Defendants and Armstrong and each of their controlled, related or affiliated
entities, including, but not limited to, bank accounts, brokerage accounts,
investments, business interests, and real and personal property, wherever
situated, identifying and describing each asset and liability, its current
location and amount;

2.     all money, assets, funds, securities, and real or personal property received
by the Corporate Defendants for the Corporate Defendants' direct or
indirect benefit, at any time from January 1, 1996, to the date of the
accounting, describing the source, amount, disposition and current location
of each of the items listed;

3.     all money, assets, funds, securities, and real or personal property disbursed
by any of the Corporate Defendants for the direct or indirect benefit of

12

A 75

H.    take such further action as the Court shall deem equitable, just and appropriate

under the circumstances upon proper application.

### XI.

IT IS FURTHER ORDERED that the temporary receiver shall:

A.    report to the Court and the parties within 30 days, subject to such reasonable

extensions as the Court may grant, the following information for each of the

Corporate Defendants:

1.    The amount of cash on hand;

2.    The amounts remaining due as of the close of business on September 10,

1999 for the Notes issued by any of the Corporate Defendants, or issued by

any entity controlled by Armstrong or a Corporate Defendant, to investors.

The report shall include, to the extent possible, the following details as to

each of the Notes:

(a)    the name of the investor,

(b)    the type of the security,

(c)    the date of sale of the security,

(d)    the amount of funds received by the Corporate Defendants

on the sale of each security,

(e)    the amount of any principal and interest due on each such

security, if applicable, and

11

take into possession all goods, chattels, rights, general intangibles, choses in action, credits, monies, effects, lands, books and records of account, and other papers, including exclusive authority to make expenditures on behalf of the Corporate Defendants, with a view to preventing loss, damage, and injury to public investors, and preserving assets and the records of the Corporate Defendants.

E.    Notwithstanding the asset freeze imposed in Paragraph IX above, the temporary receiver shall have the power to open and close bank accounts, securities accounts and commodities accounts; to purchase or sell securities and commodities contracts in any such account of the Corporate Defendants; and to execute checks or otherwise disburse money from those bank or securities accounts of the Corporate Defendants to pay their obligations in the normal course of business; except, however, that pending further order of the Court, neither the Corporate Defendants nor the temporary receiver shall make any payments of principal or interest on accounts payable on promissory notes or other securities issued by any of the Corporate Defendants, or issued by any entity controlled by Armstrong or a Corporate Defendant, to investors, or make any distribution to investors or holders of equity interests;

F.    review the daily report of transactions by the Corporate Defendants and immediately report to the Commission any transactions that appear not to be in the ordinary course of business;

G.    if appropriate, file for relief and protection under the Federal Bankruptcy Code, on behalf of the Corporate Defendants, after notice to all parties in this action; and

10

A  73

such assets, funds, or other properties, except for reasonable living expenses for Armstrong/ to— *not to exceed $5,000 without a prior order of the Court* ~~to which the Commission agrees by stipulation or which the Court may later order.~~ *X and for reasonable attorney's fees for defendants not to exceed $10,000 without a prior order of the Court.*

IT IS FURTHER ORDERED that, pending further order of this Court,

Alan M. Cohen, Esq be, and hereby is, appointed to act as temporary receiver for defendants Princeton Economics and Princeton Global (the "Corporate Defendants"). The temporary receiver is hereby empowered to:

A.  take and retain immediate possession, custody, and control of all assets and property and the books and records of original entry of the Corporate Defendants including, without limitation, all assets and property described in Paragraph IX of this Order;

B.  take all steps he deems necessary to secure and protect the assets and property of the Corporate Defendants, including but not limited to the premises, files, and information systems;

C.  engage and employ persons, in his discretion, to assist him in carrying out his duties and responsibilities hereunder, including accountants, attorneys, securities and commodities traders, and other experts;

D.  acquire and retain all rights and powers which the Corporate Defendants have to manage, control, operate and maintain their businesses (including, but not limited to, the power to direct, hire, suspend, and terminate personnel), and to possess, receive, or use income, earnings, rents, and profits with full power to commence, maintain, defend or participate in legal proceedings, to sue for, collect, receive and

9

(b)    making any untrue statement of a material fact or omitting to state a material fact

necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; or

(c)    engaging in any act, practice or course of business which operates or would

operate as a fraud or deceit upon any person,

in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R.

§ 240.10b-5, thereunder.

## IX.

IT IS FURTHER ORDERED that, pending a hearing and determination of the

Commission's Application for a Preliminary Injunction, and excepting any actions authorized by

Subparagraph E. of Paragraph X of this Order, each of the Defendants and each's officers, agents,

servants, employees, attorneys, and those persons in active concert or participation with them

who receive actual notice of such Order by personal service, facsimile service, or otherwise, and

each of them, hold and retain within their control, and otherwise prevent any withdrawal, transfer,

pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any assets, funds,

or other properties (including money, real or personal property, securities, choses in action or

property of any kind whatsoever) of Defendants currently held by them or under their control,

whether held in any of their names or for any of their direct or indirect beneficial interest wherever

situated, and directing each of the financial or brokerage institutions, debtors, and bailees, or any

other person or entity holding such assets, funds, or other properties of Defendants to hold or

retain within its control and prohibit the withdrawal, removal, transfer, or other disposal of any

A 71

## VII.

IT IS FURTHER ORDERED that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, Defendants, and each of them, be and hereby are temporarily restrained from, directly or indirectly, singly or in concert, in the offer or sale of any security, by use of the mails, or any means or instrumentality of transportation or communication in interstate commerce:

    (a)    employing any device, scheme or artifice to defraud;

    (b)    obtaining money or property by means of an untrue statement of material fact or omitting to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c)    engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## VIII.

IT IS FURTHER ORDERED that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, Defendants, and each of them, be and hereby are temporarily restrained from, directly or indirectly, singly or in concert, in connection with the purchase or sale of any security, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange:

    (a)    employing any device, scheme, or artifice to defraud;

7

(3)    The names and last known addresses of all bailees, debtors, and other persons and
entities which are currently holding the assets, funds or property of Defendants;
and

(4)    All assets, funds, securities, real or personal property received by Defendants, or
any other entity controlled by Defendants, from parties who purchased securities
from Defendants, or any other entity controlled by Defendants, from January 1,
1996, to the date of the accounting, and the disposition of such assets, funds,
securities, real or personal property.

## V.

IT IS FURTHER ORDERED that Defendants show cause at that time why this Court
should not enter an Order directing that Defendants repatriate assets held overseas.

## VI.

IT IS FURTHER ORDERED that Defendants show cause at that time why this Court
should not enter an Order enjoining and restraining Defendants, or any person or entity acting at
their direction or on their behalf from destroying, altering, concealing or otherwise interfering
with the access of the plaintiff to any and all documents, books and records which are in the
possession, custody or control of Defendants, their agents, employees, servants, accountants,
financial or brokerage institutions, and attorneys that refer, reflect or relate to the allegations of
the Complaint, including, but not limited to, documents, books and records referring, reflecting or
relating to the Defendants' finances, business operations, and their offer or sale of securities and
the use of proceeds therefrom.

A   69

such assets, funds, or other properties, except for reasonable living expenses for Armstrong, to which the Commission agrees by stipulation or which the Court may later order.

### III.

IT IS FURTHER ORDERED that Defendants show cause at that time why the temporary receiver appointed in Paragraph X herein should not continue to act as temporary receiver for defendants Princeton Economics and Princeton Global.

### IV.

IT IS FURTHER ORDERED that Defendants show cause at that time why this Court should not also enter an Order directing that each of the Defendants file with this Court and serve upon plaintiff Commission, within five business days, or within such extension of time as the Commission agrees, a verified written accounting, signed by such Defendant under penalty of perjury, of:

(1)   All assets, liabilities and property currently held directly or indirectly by or for their benefit, including but not limited to bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2)   All money, property, assets, and other income received by Defendants, or for their direct or indirect benefit, in or at any time from January 1, 1996 to the date of the accounting, describing the source, amount, disposition and current location of each of the items listed;

5

**NOW, THEREFORE,**

**I.**

IT IS HEREBY ORDERED that Defendants show cause, if there be any, to this Court at _2:30 pm_ o'clock _____ on the _21st_ day of _September_ 1999, in Room _110_ ~~of~~ _40 Centre Street_ of the United States Courthouse, 500 Pearl Street, New York, New York, why this Court should not enter an Order preliminarily enjoining them from committing further violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

**II.**

IT IS FURTHER ORDERED that Defendants show cause at that time why this Court should not also enter an Order directing that each of the Defendants and each's officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service, or otherwise, and each of them, hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any assets, funds, or other properties (including money, real or personal property, securities, choses in action or property of any kind whatsoever) of Defendants currently held by them or under their control, whether held in any of their names or for any of their direct or indirect beneficial interest wherever situated, and directing each of the financial or brokerage institutions, debtors, and bailees, or any other person or entity holding such assets, funds, or other properties of Defendants to hold or retain within its control and prohibit the withdrawal, removal, transfer, or other disposal of any

4

A 67

3.    Due in part to Defendants' apparent fraudulent conduct, it appears that Princeton Economics and Princeton Global are each in a precarious financial condition.

4.    It appears that a Temporary Restraining Order freezing assets is necessary to preserve the *status quo*.

5.    Defendants may attempt to dissipate or transfer from the jurisdiction of this Court funds, property and other assets that could be subject to an order of disgorgement or an order imposing civil penalties.

6.    The appointment of a temporary receiver is necessary to (i) preserve the *status quo*, (ii) liquidate highly volatile assets held by Princeton Economics and Princeton Global in order to prevent the diminution of the value of those assets, (iii) ascertain the true financial condition of Princeton Economics and Princeton Global, and the disposition of investor funds, (iv) prevent the encumbrance or disposal of property or assets of Princeton Economics and Princeton Global, other than in the ordinary course of business, and (v) bring Princeton Economics and Princeton Global into compliance with the law.

7.    It appears that Defendants may attempt to destroy, alter or conceal documents.

8.    This Court has jurisdiction over the subject matter of this action and over each of the Defendants, and venue properly lies in this district.

the destruction or alteration of documents; and (2) pending adjudication of the foregoing, an order: (a) temporarily restraining Defendants from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5; 17 C.F.R. § 240.10b-5; (b) freezing Defendants' assets; (c) appointing a temporary receiver for defendants Princeton Economics and Princeton Global; (d) prohibiting the destruction or alteration of documents; and (e) prohibiting the filing of a bankruptcy petition with respect to any of the Defendants without leave of the Court; and (3) providing for expedited discovery in preparation for a hearing on this Order to Show Cause; the Court has considered the Commission's Complaint, dated September 13, 1999, the Declaration of Kristine Collins, dated September 13, 1999, and the exhibits thereto, and the Memorandum of Law in Support of Plaintiff's Application. Based upon the foregoing, the Court finds that a proper showing has been made for the relief granted herein, for the following reasons:

1.      It appears from the evidence presented that defendants Princeton Economics, Princeton Global and Armstrong, directly or indirectly, have engaged, are engaging and, unless temporarily restrained, will continue to engage, in transactions, acts, practices and courses of business, in the offer or sale and in connection with the purchase or sale of securities, that violate Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

2.      It appears that Defendants, directly and indirectly, have obtained billions of dollars from investors by making materially false and misleading statements in the offer or sale, and in connection with the purchase or sale, of securities.

A 65

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

#2



---------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

                 Plaintiff,

   - against -

PRINCETON ECONOMICS INTERNATIONAL, LTD.,
PRINCETON GLOBAL MANAGEMENT, LTD., and
MARTIN A. ARMSTRONG,

                 Defendants.

---------------------------------------------------x

Docket also in
99 Civ. 966

### ORDER TO SHOW CAUSE, TEMPORARY RESTRAINING ORDER, AND ORDER FREEZING ASSETS, APPOINTING RECEIVER, AND GRANTING OTHER RELIEF

Upon the Application of Plaintiff Securities and Exchange Commission ("Commission")

for an order (1) directing defendants Princeton Economics International, Ltd. ("Princeton

Economics"), Princeton Global Management ("Princeton Global") and Martin Armstrong

("Armstrong") (collectively, the "Defendants") to show cause why an order should not be entered

pending adjudication of this action:  (a) preliminarily enjoining Defendants from violating Section

17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b)

the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17

C.F.R. § 240.10b-5, (b) freezing Defendants' assets; (c) appointing a temporary receiver for

defendants Princeton Economics and Princeton Global; (d) requiring each of the Defendants to

provide a verified written accounting of all assets, money and property in each's possession, and

all assets, money and property received by each from the offer or sale of securities, and the

disposition thereof; (e) requiring Defendants to repatriate assets held overseas; and (f) prohibiting

MICROFILM   SEP 1 4 1999   -12:02 PM